Rivera Martínez, Juez Ponente
*840 TEXTO COMPLETO DE LA SENTENCIA
El 14 de enero de 2004, la Universidad de Puerto Rico presentó ante nos solicitud de certiorari. Mediante la misma, solicita la revisión de la resolución dictada el 21 de octubre de 2003, por el Tribunal de Primera Instancia, Sala Superior de San Juan, en el caso Susana J. Dodgson v. Universidad de Puerto Rico, Civil Número KPE1999-2733.
Mediante la referida resolución, el Tribunal de Primera Instancia declaró no ha lugar una moción de desestimación y/o de sentencia sumaria presentada por la Universidad de Puerto Rico (en adelante la U.P.R.). Copia de dicha resolución fue notificada por correo y archivada en autos el 30 de octubre de 2003.
El 14 de noviembre de 2003, la U.P.R. presentó moción de reconsideración de dicha resolución ante el Tribunal de Primera Instancia. El 20 de noviembre de 2003, el Tribunal recurrido dictó orden para que en el término de diez (10) días la recurrida se expresara con relación a la solicitud de reconsideración de la U.P.R. No obstante, el 18 de noviembre de 2003, la recurrida ya había presentado una oposición a la moción de reconsideración. Mediante orden notificada el 15 de diciembre de 2003, el Tribunal de Primera Instancia declaró no ha lugar la moción de reconsideración aludida.
Luego de ponderar los escritos presentados, así como los hechos y el derecho aplicable, procede modificar la resolución recurrida y así modificada se confirma. Veamos.
I
El 13 de octubre de 1999, la Dra. Susana J. Dodgson (doctora en Ciencias), parte recurrida del caso de autos, presentó demanda ante el Tribunal de Primera Instancia, alegando en síntesis: (1) incumplimiento de contrato de empleo, (2) culpa y negligencia y violación del deber de buena fe en la terminación de negociaciones pre-contractuales; (3) discriminación por razón de sexo bajo la Ley Núm. 100 de 30 de junio de 1959, 29 L.P.R.A. 146 et seq. (en adelante Ley Núm. 100), y (4) cobro de dinero.
El 27 de diciembre de 1998, la U.P.R. presentó contestación a demanda. En la misma, la U.P.R. levantó como defensas: (1) que la UPR no es patrono bajo la Ley Núm. 100, por lo que no puede ser demandada al amparo de dicha ley; (2) que el alegado contrato de empleo entre Dodgson y la U.P.R. nunca existió, ya que los elementos de consentimiento, objeto y causa jamás llegaron a materializarse; (3) la ausencia de circunstancias y eventos en la relación pre-contractual que son jurisprudencialmente requeridos para sostener una reclamación por la terminación de conversaciones pre-contractuales; (4) la decisión de la U.P.R. de no emplear a Dodgson se basó en factores puramente económicos y presupuestarios y no el alegado discrimen por razón de sexo; (5) que la U.P.R. no le debe dinero alguno a Dodgson, ya que los hechos no controvertidos establecen que se le pagó por el trabajo que realizó como profesora visitante durante el mes de marzo de 1996.
Cabe señalar que, previo a la demanda de autos, el 29 de mayo de 1996, Dodgson había presentado igual demanda ante el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico (en adelante el Tribunal Federal). Dicho Foro se declaró sin jurisdicción y desestimó la demanda, sin perjuicio, amparándose en la Undécima Enmienda de la Constitución de los Estados Unidos y en su determinación de que la U.P.R. es una instrumentalidad gubernamental sin fines comerciales o de lucro a la que no le aplica la Ley Núm. 100. La referida sentencia fue dictada el 30 de septiembre de 1998 y archivada en autos el 19 de octubre de 1998.
Lugo de varios trámites procesales, las partes en el caso de autos, acordaron utilizar el descubrimiento de prueba que se había llevado a cabo cuando el pleito estuvo presentado en el Tribunal Federal. Así las cosas, la *841 conferencia con antelación al juicio fue señalada inicialmeñte para el .24 de mayo de 2001.
El 28 de septiembre de 2001, la U.P.R. presentó su Moción de Desestimación y/o de Sentencia Sumaria. En la aludida moción, ésta señaló, en esencia, que para noviembre de 1994, la U.P.R. estaba en búsqueda de un Director (“Chairperson”) para el Departamento de Fisiología y Biofísica de-la Escuela de Medicina. El 16 de noviembre de 1994, la parte recurrida, mediante carta al efecto, manifestó su.interés en dicha posición. Alegó la U.P.R. que debido a problemas económicos relacionados con una reducción de los ingresos que la U.P.R. habría de recibir del Departamento de Salud, fue necesario congelar las plazas vacantes incluyendo la posición que interesaba Dodgson. Alegó, además, la U.P.R., que aunque no hubo discrimen por razón de sexo en contra de la recurrida, la Ley 100 no le aplica, por ser ésta una instrumentalidad del Gobierno de Puerto Rico que no opera como negocio o empresa privada, toda vez que opera sin fines de lucro.
El 14 de noviembre de 2001, luego de solicitar una prórroga, la recurrida presentó su oposición a la moción de desestimación y/o sentencia sumaria presentada por la U.P.R.' En la misma, alegó que existía un contrato que había sido perfeccionado y la U.P.R. había violado el mismo al no nombrarla para la posición de Directora del Departamento de Fisiología y Biofísica, que la situación financiera alegada por la U.P.R. fue un pretexto para esconder un discrimen por sexo que alegadamente existía en dicha facultad y que la Ley Núm. 100 aplica a la U.P.R. por operar como un negocio o empresa privada.
Mediante Resolución del 21 de octubre de 2003, el Tribunal de Primera declaró no ha lugar la moción de desestimación y/o de sentencia sumaria de la U.P.R. En síntesis, el tribunal recurrido concluyó que la U.P.R. era patrono a los efectos de la Ley Núm. 100 por lo que . tenía jurisdicción para entender en esta acción, que la sentencia dictada por el Tribunal Federal desestimando el pleito y su interpretación con respecto a la aplicación de la Ley Núm. 100 a la U.P.R. no obliga a los tribunales estatales, y que hay controversia de hecho respecto a las razones por las cuales la recurrida no fue contratada.
Inconforme con dicho dictamen, la U-PR- presentó el recurso que nos ocupa, indicando que el Tribunal de Primera Instancia incidió en la comisión de dos errores, a saber: (1) que erró y cometió abuso de discreción al determinar que existía una controversia de hechos que impide que se dicte sentencia sumaria a favor de la U.P. R. y al declarar sin lugar dicha moción, y (2) que erró al determinar que la U.P.R. es una instrumentalidad del Gobierno que opera como empresa privada y que por lo tanto es un patrono según definido en la Ley Núm. 100. Veamos.
Discutiremos en primer lugar el segundo señalamiento de error.
II
Primeramente discutiremos si la U.P.R. es patrono, según la definición de la Ley 100, supra.
El Artículo 6, inciso 2 de la referida Ley Núm. 100, supra, define patrono como:
“Toda persona natural o jurídica que emplee obreros, trabajadores o empleados, y al jefe, funcionario, gerente, oficial, gestor, administrador, superintendente, capataz, mayordomo, agente o representante de dicha persona natural o jurídica. Incluirá aquellas agencias o instrumentalidades del Gobierno de Puerto Rico que operen como negocios o empresas privadas. 29 L.P.R.A. see. 151. ” (Enfasis suplido.)
En Rodríguez Cruz v. Padilla, 125 D.P.R. 486 (1990), el Tribunal Supremo interpretó el alcance del término patrono y determinó que:

“El historial legislativo de la Ley Núm. 100 revela que su objetivo principal es proteger a los empleados de la empresa privada contra todo tipo de discrimen aun cuando, por excepción, se extiende la protección a los 
*842
empleados de las agencias o instrumentalidades del gobierno que operan como negocios o empresas privadas. Es importante señalar que en los debates que precedieron la aprobación de la ley surge que la frase ‘agencias o instrumentalidades del gobierno que operan como negocio o empresa privada se refiere únicamente a las corporaciones públicas del E.L.A. ’ pág. 7473. ”

Para determinar cuándo una agencia o instrumentalidad del gobierno funciona como empresa o negocio privado, nuestro más alto foro en el caso A.A.A. v. Unión de Empleados A.A.A., 105 D.P.R. 437, 455-456 (1976), señaló como criterios a considerar:

“...si los empleados de la agencia concernida están cubiertos por la Ley de Personal del E.L.A.; si los servicios prestados por la agencia, por su naturaleza intrínseca, nunca Hati sido prestados por la empresa privada; si la agencia está capacitada para funcionar como una empresa o negocio privado; si la agencia, de hecho, funciona como una empresa o negocio privado; el grado de autonomía administrativa de que goce; si se cobra o no por un precio o tarifas por el servicio rendido (precio que debe ser básicamente equivalente al valor del servicio); si los poderes y facultades concedidos en la ley orgánica de la agencia la asemejan fundamentalmente a una empresa privada; y si la agencia tiene o no la capacidad para dedicarse en el futuro a negocios lucrativos o actividades que tengan por objeto un beneficio pecuniario. A estos criterios pueden añadirse otros, sin pretender agotar la lista; la estructura en si de la entidad; la facultad de la agencia para demandar y ser demandada ilimitadamente; el poder de obtener fondos propios en el mercado general de valores a base de su récord económico y sin empeñar el crédito del E.L.A.; la facultad de adquirir y administrar propiedades sin la intervención del Estado; el punto hasta donde el reconocimiento a los trabajadores de la agencia de los derechos a que se refiere el primer párrafo del la Sec. 18 concuerda o no con el esquema constitucional. ”

Procederemos a analizar los mismos y aplicarlos a la realidad de la U.P.R.
Primero,, aunque la U.P.R. no se rige por la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sees. 1301, et seq., el Consejo de Educación Superior aprobó el Reglamento General de la U.P.R. fundamentado en el principio de mérito establecido en dicha ley. Por lo tanto, aquellos empleados cubiertos por el referido reglamento, gozan de la protección de que serán seleccionados, adiestrados, ascendidos, retenidos y tratados en todo lo referente a su empleo en consideración al mérito y sus capacidades.
Segundo, cuando los servicios rendidos por la agencia, por su naturaleza intrínseca, nunca han sido ofrecidos por la empresa privada, su naturaleza tiende a ser gubernamental, más bien que de un negocio privado. En cambio, si la instrumentalidad rinde servicios como los que prestan empresas privadas, y lo hace con propósitos lucrativos, su naturaleza tiende a ser la de un negocio privado. Junta de Relaciones del Trabajo v. Corporación del Conservatorio de Música, 140 D.P.R. 407 (1996). Aunque la labor de impartir educación es compartida con entidades privadas, la finalidad de promover tal educación a niveles de excelencia, sobre todo en relación con jóvenes talentosos de escasos recursos, convierten a la U.P.R. en una institución singular de clara naturaleza gubernamental. La U.P.R. es el órgano de lá educación superior que tiene la misión esencial de alcanzar unos objetivos delimitados por ley en cumplimiento de su obligación de servicio al Pueblo de Puerto Rico y a su debida fidelidad a los ideales de nuestra sociedad democrática. 18 L.P.R.A. see. 601. Los objetivos primordiales de la U.P.R. son promover el saber, investigar, educar y proveer servicios a la ciudadanía, industria y gobierno. La Universidad no opera con ánimo directo ni indirecto de lucro. Sepúlveda v. U.P.R., 115 D.P.R. 526, 527 (1984).
Por otro lado, la U.P.R. tiene unas facultades corporativas que la asemejan fundamentalmente a una empresa privada. A esos efectos, dispone el Artículo 3 dicha Ley Núm. 1 del 20 de enero de 1966, según ha sido enmendada, que:
*843 “La Universidad de Puerto Rico tendrá todas las atribuciones, prerrogativas, responsabilidades y funciones propias de una entidad corporativa encargada de la educación superior, confiriéndole autoridad para demandar y ser demandada; adquirir y poseer bienes muebles o inmuebles, e hipotecar, vender o en cualquier forma enajenar los mismos; contraer deudas, celebrar contratos, invertir sus fondos en forma compatible con los fines y propósitos de este capítulo; adoptar y usar un sello oficial; aceptar y administrar donaciones, herencias y legados. Tendrá la custodia, el gobierno y la administración de todos sus bienes de cualesquiera clase, y de todos sus fondos. ” (18 L.P.R.A. see. 602 (f)(1))
La concesión de estas facultades tiene como objetivo el proveerle a la U.P.R. la mayor autonomía posible para asegurar su debido funcionamiento acorde con su más amplia libertad de cátedra y de investigación científica. Ahora bien, lo anterior no la convierte en una empresa privada dedicada a negocios lucrativos. Su estructura es claramente distinguible de cualquier empresa privada, ya que no opera con ánimo directo ni indirecto de lucro y por consiguiente no es negocio. Sepúlveda v. U.P.R., supra, pág. 527. 
Tercero, en cuanto al grado de autonomía fiscal de que disfruta la misma, la U.P.R. como corporación pública, de origen legislativo, encargada de la educación superior en Puerto Rico, "tiene una obligación de servicio al Pueblo de Puerto Rico." Sepúlveda v. U.P.R., süpra, pág. 527. Dicha entidad educativa se nutre de fondos provenientes del "Fondo General del Tesoro Estatal". 18 L.P.R.A. sec. 621-1. Así, depende esencialmente de los fondos que la Asamblea Legislativa le asigne cada año. A estos efectos, se expresó en U.P. R. v. Asociación, 136 D.P.R. 335 (1994), que:
“En el contexto clásico, las empresas que operan con fines de lucro perciben ganancias que provienen de su capacidad de vender sus productos a precio que sobrepasan sus costos. Bajo este esquema, las decisiones gerenciales de la empresa tienen un impacto directo sobre sus ingresos, ya sea mediante el control de los costos o el aumento de los precios. Este esquema no se da ni puede darse en la U.P.R. De las propias determinaciones de la Junta se desprende que alrededor del ochenta y seis porciento (86%) del presupuesto de la Universidad proviene del Fondo General del E.L.A. Ese porciento responde a una fórmula establecida por ley sobre la cual la U.P.R. no tiene control.” (Enfasis suplido).
De hecho, sus estudiantes sólo cubren una ínfima parte del costo pagando una cantidad limitada por concepto de matrícula. Sepúlveda, supra, pág. 527. Por su propia naturaleza de institución pública, la U.P.R. está impedida de convertirse en un centro docente dirigido a ofrecer educación a sólo aquellos que puedan pagar sus altos costos. Aplicados los criterios señalados en A.A.A. v. Unión de Empleados de A.A.A., supra, es forzoso concluir que la U.P.R. no es "patrono" bajo la Ley 100, supra.
Conforme a todo lo anteriormente expuesto, resolvemos que no procede considerar a la U.P.R. como “patrono” bajo las disposiciones de la Ley 100, supra.
Ill
Por otra parte, la U.P.R. señala que el Tribunal de Primera Instancia incidió al determinar que existían controversias de hechos en cuanto a las razones por las cuales la recurrida no fue contratada por la U.P.R., las cuales impedían que se dictara sentencia sumaria a su favor: Veamos.
La Regla 36.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 36.3, autoriza al tribunal a dictar sentencia sumaria cuando "no existe controversia real sustancial en cuanto a ningún hecho material y... como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente”. Véase, además, P.A.C. v. E.L.A., 150 D.P.R. 359 (2000); Soto v. Rivera, 144 D.P.R. 500 (1997); Rodríguez v. Srio. de Hacienda, 135 D.P.R. 219, 222 (1994); Tello, Rivera v. Eastern Airlines, 119 D.P.R. 83, 86 (1987); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714, 720 (1986).
*844 La Regla 36.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. m, R. 36.1, provee a través de la sentencia sumaria un instrumento procesal para la resolución expedita, sin que medie vista en su fondo, de aquellos casos donde la única controversia a dirimirse por el Tribunal resida en la aplicación del derecho. Corresponde a la parte promovente acreditar al Tribunal que no existe una controversia genuina en relación con los hechos materiales en litigio y que ante la ausencia de tal controversia procede, como cuestión de derecho, que se dicte sentencia a su favor. Soto v. Rivera, supra; Rivera et al v. Superior Pkg., Inc., 132 D.P.R. 115 (1992); Tello, Rivera v. Eastern Airlines, supra; MCrillis v. Aut. Navieras de P.R., 123 D.P.R. 113 (1989); Nassar Rizek v. Hernández, 123 D.P.R. 360 (1989); Consejo Tit. C. Parkside v. M.G.I.C. Fin. Corp., 128 D.P.R. 538 (1991).
Cualquier duda sobre la existencia de una controversia debe resolverse contra la parte que presenta la solicitud de sentencia sumaria. Rivera v. Dpto. de Hacienda, 149 D.P.R. 141 (1999). Aun cuando se determine que es pertinente dictar sentencia de forma sumaria, ello no implica que ésta tenga que favorecer a la parte promovente. Col. Ing. Agrim. P.R. v. A.A.A., 131 D.P.R. 735 (1992). De la misma manera, los documentos que acompañan la moción de sentencia sumaria deben verse en la forma más favorable a la parte que se opone a la moción, concediéndole el beneficio de toda inferencia que razonablemente se pueda derivar de ellos. De surgir una controversia real de los mismos documentos que acompañan a la moción, se debe denegar la solicitud. Corp. Presiding Bishop of CJC of LDS. v. Purcell, supra, a las págs. 720-721.
Por tratarse de un remedio extraordinario, la sentencia sumaria sólo debe dictarse cuando el promovente ha establecido su derecho con entera claridad y ha quedado demostrado que la otra parte no tiene derecho al remedio solicitado bajo cualquier circunstancia que resulte discernible de las alegaciones que no hayan sido refutadas por la evidencia que acompaña a la moción. El tribunal debe tener ante sí todos los hechos esenciales para dictar sentencia sumaria. Ríos v. Cidra Mfg. Oper. of P.R., 145 D.P.R. 746 (1998); PFZ Prop. Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881 (1994); J.A.D.M. v. Centro Com. Plaza Carolina, supra.
La parte que solicita que se dicte sentencia sumaria en un litigio está en la obligación de demostrar, fuera de toda duda, la inexistencia de controversia real sobre todo hecho pertinente que, a la luz del derecho sustantivo aplicable, determinaría una sentencia a su favor como cuestión de ley. López Stubbe v. J. Gus Lallande, 144 D.P.R. 774 (1998).
El propósito primordial de la sentencia sumaria es el de promover una solución justa, rápida y económica de la litigación, abreviando la disposición de pleitos que por no envolver una genuina controversia de hechos materiales, no ameritan o hacen innecesario la celebración de un juicio o vista en su fondo. El recurso de sentencia sumaria debe estar disponible para limpiar la casa de frivolidades. Fernández and Gutiérrez v. Mun. de San Juan, 147 D.P.R. 824 (1999); García v. Darex, P.R., Inc., 148 D.P.R. 364 (1998); ACAA v. Travelers, Inc., Co., 104 D.P.R. 844, 847 (1976).
El vehículo procesal de sentencia sumaria, aunque contribuye a la economía procesal al aligerar los casos, no debe aplicarse livianamente. Pérez v. Advisors Mortgage Investors, 130 D.P.R. 530 (1992). Presentada una moción solicitando se dicte sentencia sumaria a tenor con lo dispuesto en la Regla 36 de las de Procedimiento Civil, supra, si no existe controversia real de hecho, la parte promovida no puede descansar meramente en aseveraciones generales contenidas en las alegaciones, sino que, a tenor con la Regla 36.5, está obligada a demostrar que tiene prueba para substanciar sus alegaciones. Es decir, la parte promovida deberá presentar declaraciones juradas y documentos que pongan en controversia los hechos presentados por el promovente. Si se cruza de brazos, corre el riesgo de que se dicte sentencia en su contra sin celebrarse un juicio en su fondo. Pardo Santos v. Sucn. de Stella Royo, 145 D.P.R. 816 (1998); Rivera et al v. Superior Pkg., Inc., supra; Consejo Tit. C. Parkside v. M.G.I.C. Fin. Corp., supra; Toledo Maldonado v. Cartagena Ortiz, 132 D.P.R. 249 (1993); Silva v. Adm. Sistemas de Retiro, 128 D.P.R. 256 (1991); Corp. Presiding Bishop CJC of LDS v. Purcell, supra; Flores v. Municipio de Caguas, 114 D.P.R. 521 (1983).
*845 A1 resolver una moción para que se dicte sentencia sumaria, un tribunal no está limitado a considerar únicamente los documentos que se acompañan con la solicitud. Deben considerarse todos los documentos en autos, sean o no parte de la solicitud. Si surge que no existe controversia real de hechos, la parte opositora no podrá descansar meramente en aseveraciones generales contenidas en sus alegaciones, sino que estará obligada a demostrar que cuenta con prueba para substanciar sus alegaciones; Flores v. Municipio de Caguas, supra. Cuando existe una controversia bonafide de hechos, no procede una sentencia sumaria. Si al hacer su análisis el tribunal alberga dudas sobre la existencia de una controversia de hechos, debe negarse a dictar sentencia sumariamente. Cuadrado v. Santiago, 126 D.P.R. 272 (1990); Rodríguez Meléndez v. Sup. Amigo, Inc., 126 D.P.R. 117 (1990).
Procede dictar sentencia sumaria cuando ha quedado claramente establecido que para resolver la controversia no hace falta una vista evidenciaría. Gerrido García v. U.C.B., 143 D.P.R. 337 (1997).
La sentencia sumaria no es aconsejable en casos donde hay elementos subjetivos de intención, propósitos mentales o negligencia; ni cuando el factor de credibilidad es esencial. Rivera v. Depto. de Hacienda, supra; Elias y otros v. Chenet y otros, 147 D.P.R. 507 (1999); Soto v. Hotel Caribe Hilton, 137 D.P.R. 294 (1994).
Por último, debe tenerse en cuenta que la moción de sentencia sumaria no debe ser utilizada en casos complejos o en casos cuya adjudicación requiera un análisis detenido y cuidadoso de los hechos. Rivera v. Depto. de Hacienda, supra; Ríos v. Cidra Mfg. Oper. of P.R., Inc., 145 D.P.R. 746 (1998). Su uso tampoco es favorecido en acciones de despido, donde está en controversia la verdadera intención de las partes. Piñero v. A.A.A., supra; Soto v. Caribe Hilton, supra.
En el caso de marras, la U.P.R. sostiene que la determinación del Tribunal de Primera Instancia con relación a la Ley 100 es una cuestión de derecho que puede ser adjudicada mediante la moción de sentencia sumaria. No obstante, conforme a la jurisprudencia anteriormente expuesta y de un análisis del expediente ante nos, se colige que existen controversias de hechos, relativa a las razones que argumenta la U.P.R. para no contratar a la demandante, que impiden que el tribunal recurrido adjudique la controversia sumariamente.
Por todos los fundamentos anteriormente expuestos, resolvemos que erró el Tribunal Primera Instancia al determinar que la U.P.R. es patrono bajo los preceptos de la Ley 100. No obstante, en cuanto a las controversias relativas a los alegados pre-acuerdos para la contratación de la Sra. Dodgson, consideramos que existen controversias de hechos que impiden que el caso de autos sea resuelto por la vía sumaria.
IV
Por todos los fundamentos anteriormente esbozados, se expide el auto de certiorari, se modifica la resolución recurrida y así modificada, se confirma.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIO 2005 DTA 22
1. Estableciendo una analogía con los municipios para efecto de determinar si son patronos bajo la definición de la Ley 100, supra, se concluyó en Rodríguez Cruz v. Padilla, supra, que: "el propósito para el cual existe un municipio no puede sostenerse que el mismo opere como un negocio o empresa privada según el significado usual y corriente de estos *846 términos. Un municipio no opera confines de lucro como los negocios privados, sino confines de servicio al público". Esta doctrina se reiteró en Rivera Briceño v. Rodríguez, 129 D.P.R. 669 (1991), y más recientemente en U.P.R. v. Asociación Puertorriqueña de Profesores Universitarios, 136 D.P.R. 335 (1994), donde se señaló que la U.P.R. no es una institución común y corriente, ni tampoco un establecimiento industrial o comercial, sino la principal institución de educación superior del país, donde el producto final es fomentar el desarrollo de la cultura y el saber de nuestro pueblo.