Opinión disidente emitida por la
Juez Asociada Señora Rodríguez Rodríguez.
Este caso nos brinda la oportunidad de expresarnos nuevamente sobre la naturaleza y el alcance de la figura estadounidense del seguro de título. Se denomina seguro de título “el seguro de dueño o el contrato de seguro con póliza de propietario” que se utiliza para cubrir riesgos en los negocios de transmisión de un interés inmobiliaro. Véase Pérez v. Advisors Mortgage Investors, 130 D.P.R. 530, 540 (1992). Específicamente, debemos pasar juicio sobre la cláusula de exclusión de este contrato.
Contrario a la conclusión a la que llega la mayoría, creo que uno de los incisos de la cláusula de exclusión del contrato de seguro que interpretamos veda la cobertura en este caso. En consecuencia, disiento del dictamen de este Tribunal y confirmaría al Tribunal de Apelaciones.
Los hechos de este caso se encuentran resumidos en la opinión mayoritaria, por lo que estimo innecesario repasarlos en estos momentos.
I
A. La aparición de los seguros de títulos acontece en Estados Unidos a finales del siglo XIX. Su finalidad fue la de cubrir el riesgo económico inherente a la inseguridad que pesaba sobre los títulos. Tanto los propietarios como los acreedores que prestaban con garantía hipotecaria, exi *389 gían un seguro contra los defectos que el título pudiera padecer y que, a la vez, amparara los costes de defenderlo judicialmente.
El seguro de título ha sido definido como “un contrato por el cual una entidad aseguradora se compromete a indemnizar al titular de un derecho real en caso de que el título asegurado se demuestre defectuoso y a asumir, en su caso, la defensa jurídica de derecho título”. B. Arruñada, El seguro de título de propiedad, LXXX (Núm. 681) Rev. Crít. Der. Inmob. 53 (2004). El contrato de seguro de título es, en su esencia, un convenio de indemnización, pues “la aseguradora se obliga a indemnizar al asegurado en el caso de que éste tuviera alguna pérdida causada por acciones incoadas por un tercero”. C. Odriozola Mariscal, El Seguro de Título Inmobiliario, Barcelona, Ed. Bosch, y México D.F., Ed. México Universitario, 2006, pág. 39. “Consecuentemente, un asegurador de título no ‘garantiza’ el estatus del título del garante. Como un contrato indemnizatorio, el asegurador se obliga a cubrir al asegurado las pérdidas o daños resultado de problemas en el título, en cuanto que la cobertura de esos daños no se encuentre excluida en la póliza.” íd., pág. 38 esc. 6.
En Pérez v. Advisors Mortage Investors, supra, pág. 539, dijimos que este seguro proporciona cobertura al asegurado contra el riesgo de que, “ ‘después de la adquisición, se descubra que en el título del enajenante ya existía, en el momento de contratar el seguro, un defecto que podía privar de su derecho al adquirente’ ”. (Enfasis suplido.) A pesar de su importancia, llama la atención la escasa regulación a que ha sido sometido, muy en particular en Puerto Rico. E. Vázquez Bote, El denominado seguro de títulos: ventajas e incontentes de su adopción en el Derecho español, XCII Rev. Der. Not. 221, 275 (1976).
Luego de estos lineamientos generales sobre el seguro de título, paso a discutir la cláusula de exclusión de la cubierta, objeto de litigación.
*390 B. Soy del criterio que la Sec. 3(a) de la cláusula de exclusión del contrato de seguro de título aplica en este caso y, como resultado de ello, el asegurado no tiene un reclamo válido contra su aseguradora. La cláusula en cuestión dispone:
The following matters are expressly excluded from Coverage of this policy and the Company will not pay loss or damage, costs, attorneys’ fees or expenses which arise by reason of:
3. Defects, liens, encumbrances, adverse claims or other matters:
(a) created, suffered, assumed or agreed to by the insured claimant,
(b) not known to the Company, not recorded in the public records at the Date of Policy, but known to the insured claimant and notdisclosed in writing to the Company by the insured clamant prior to the date insured claimant became insured under this policy. Apéndice, pág. 21.
Por defectos o reclamaciones adversas, según descritas en la cláusula que antecede, debemos entender “la existencia de cualquier vicio que afecte la validez deltítulo de propiedad, ... siempre que ese defecto sea desconocido a la fecha de expedición de la póliza”. Odriozola Mariscal, op. cit., pág. 93. Es decir, el conocimiento del asegurado del vicio que pesa sobre su título opera para denegar la cubierta. Ese conocimiento hace del riesgo uno no asegurado, pues ha sido asumido por el asegurado. Con lo cual, somos del criterio que si de la escritura de compraventa suscrita en este caso surge que el asegurado conocía del defecto o de la reclamación adversa que pesaba sobre el inmueble que se adquiría y no obstante asumió el riesgo, su intención fue recibir el título sujeto a ese defecto, por lo que el seguro de título adquirido no cubre ese riesgo conocido y asumido.
En este caso, cuando los peticionarios otorgaron la Escritura de Compraventa Núm. 18 y se expidió la póliza de seguro de título, ya se había instado un pleito en el Tribu *391 nal de Primera Instancia, del cual se desprendía el potencial vicio que se ceñía sobre el título del inmueble adquirido. En esta demanda se había impugnado los permisos que aprobaron el desarrollo de Vista Bahía y, en consecuencia, la validez de la segregación del solar de mil metros de la finca principal, cuya segregación y compraventa se pretendía llevar a cabo mediante la Escritura Núm. 18. Véase Ana Ramos Toro v. Carlos A. Rivera Bustamante, caso Núm. KPE2002 — 0190 (904). En la propia escritura de compraventa, la notario hizo referencia al referido litigio indicando, entre otras cosas, que en éste “se ha cuestionado la legalidad de lo [sic] permisos gubernamentales concedidos en relación con el proyecto”. Apéndice, pág. 18. La notario, a su vez, informó a la parte compradora “de la conveniencia de examinar los autos del mencionado caso previo al otorgamiento de esta escritura, en cuyo caso se puede posponer el cierre”. Id. No hay duda entonces de que el litigio arrojaba una sombra peligrosa sobre la validez del título que se adquiría y ese hecho era conocido por los compradores. Siendo así, éstos lo asumieron.
De ordinario, establecer el conocimiento real del asegurado dependerá de la credibilidad que le merezca al juzgador el testimonio vertido en corte, salvo, claro está, que exista prueba escrita sobre el particular. Precisamente esa es la situación en este caso, como ya vimos. 11 Couch on Insurance 3d Sec. 159:81, pág. 159-101 (1998) (“Actual knowledge is extremely difficult to prove, and generally is base don the credibility of the insures. Absent written documentation, actual knowledge can only be proven through detailed depositions of the insured and related parties”). Necesariamente, los compradores tuvieron conocimiento del riesgo potencial que se cernía sobre la propiedad que adquirían y lo asumieron, es decir, consistieron a las consecuencias de la situación o del riesgo expuesto en la escritura de compraventa, lo que es suficiente según los términos del contrato de seguro de título para negarle cubierta. *392 íd. (“Actual knowledge of the insured is obviously sufficient to establish the applicability of the provisions excluding defects, claims or encumbrances existing at the date of the policy and known to the insured”).
Por su propia naturaleza, la póliza de seguro de título cubre los riesgos desconocidos por el comprador a la fecha de su adquisición y no asume cualquier riesgo que pueda existir sobre la propiedad, más aún, cuando esos defectos o riesgos se excluyen expresamente en la cubierta y son conocidos por el adquirente.
El peticionario, invocando el inciso (b) de la sección antes transcrita, arguye que la aseguradora conocía del pleito, por lo cual no cabe hablar de que la póliza no ofrece la cubierta que se reclama. No coincidimos con esta interpretación; los incisos (a) y (b) de la See. 3 de la cláusula de exclusión son separados y cubren distintos asuntos. Es decir, no se requiere que se cumpla con lo dispuesto en el inciso (a) para activar la al inciso (b). Por consiguiente, la Sec. 3(a) tiene vida propia y separada de la Sec. 3(b). Los asuntos consentidos por el asegurado están expresamente excluidos de cubierta conforme la Sec. 3(a), independientemente de que se los informara o no a su aseguradora. En estos casos, para que el asegurado tenga cubierta, tiene que haberse provisto un endoso especial o declaración afirmativa de cubierta que incluya el riesgo conocido.
Además, una póliza asegura aquello que se describe o se incluye en el anejo a la póliza, denominado “Schedule A”. Es decir, el “Schedule A” define el título asegurado, la póliza de seguros no asegura un título más allá de lo allí provisto. En este caso, ese anejo hacía referencia a la escritura de compraventa, la aseguradora, por lo tanto, no aseguró un título más abarcador que el que adquirió la parte peticionaria mediante dicha escritura, con las limitaciones y riesgos aceptados en la misma escritura. Sostener lo contrario implicaría que con el seguro lo que se busca es “asegurar” las resultas del litigio.
*393 En conclusión, soy del criterio que el propósito de las pólizas de seguro de título es cubrir solamente los riesgos desconocidos por el comprador a la fecha cuando éste adquiere la póliza. El hecho de que los peticionarios consintieron al contrato de compraventa con pleno conocimiento de la existencia y naturaleza del pleito KPE2002-0190 (904), implica que ellos voluntariamente asumieron y consintieron al riesgo, en relación con el seguro de título, de un resultado adverso en este pleito. Ante la ausencia de un endoso especial que pudiera cubrir este riesgo, forzoso es concluir que procedía desestimar el reclamo instado por los aquí peticionarios.