*507 SENTENCIA
La Sra. Damaris Molina Maldonado, por sí y en repre-sentación de sus hijas, y el Sr. Héctor Camacho Cosme nos solicitan que revisemos una Sentencia emitida por el Tribunal de Apelaciones. En la referida Sentencia, el foro ape-lativo intermedio dictaminó que la codemandada, Coopera-tiva de Seguros Múltiples (C.S.M.), no tiene que pagar los intereses pre sentencia que sobrepasen el límite de cu-bierta por ocurrencia de una póliza de seguro aunque el Tribunal de Primera Instancia la haya declarado temeraria.
I
El 19 de marzo de 2001, a las 5:40 am, el Sr. Nelson Luis Camacho Alvarado se encontraba detenido entre el área dedicada para paradas de emergencias (paseo) y el área verde de la carretera número 22, en dirección de este a oeste, en el kilómetro 78.4 del municipio de Arecibo, debido a que su vehículo de motor confrontó problemas mecánicos. Mientras el Sr. Camacho Alvarado se encontraba en el área indicada, el Sr. Luis Rivera Torres conducía un vehículo de motor marca Dodge Van Ram, cuyo titular registral es el Sr. Domingo Rivera Torres, hermano del conductor.
El agente José Cruz Morán, quien estaba destacado en la investigación de accidentes de tránsito, se encontraba patrullando por la mencionada carretera con el sargento Hernández y vieron el vehículo del señor Camacho Alvarado detenido en el área de emergencia. Luego, pasados unos quince minutos, el agente Cruz Morán recibió una comunicación por radio en la cual se le indicaba que en el área donde se encontraba el vehículo ocurrió un accidente.
Cuando llegaron al área del accidente, observaron el *508 cuerpo sin vida del señor Camacho Alvarado, quien yacía sobre el pavimento. El Sr. Luis Rivera Torres se encon-traba en el lugar y le informó a los agentes que perdió el control del vehículo e impactó al vehículo del señor Camacho Alvarado, y que éste salió corriendo tratando de prote-gerse pero lo atropelló ocasionándole la muerte en el acto.
Luego del accidente, el agente Cruz Morán preparó el informe del accidente de tránsito y el de persona muerta. Para realizar el informe se llevó a cabo una investigación en la cual se tomaron las medidas del área, la ubicación de los vehículos, así como el lugar donde yacía el cuerpo del señor Camacho Alvarado.
El 4 de marzo de 2002, la señora Molina Maldonado, por sí y en representación de sus hijas, y el señor Camacho Cosme presentaron una demanda contra los señores Rivera Torres por los daños y peijuicios sufridos como conse-cuencia de la muerte del señor Camacho Alvarado.(1) El 29 de octubre de 2002, el codemandado, Sr. Luis Rivera Torres, presentó su contestación a la demanda. En ésta negó haber incurrido en cualquier tipo de responsabilidad por el accidente así como por cualquier daño ocasionado por éste. La demanda fue enmendada para incluir a la C.S.M. como parte demandada. Ello, por existir para la fecha del acci-dente una póliza de seguro expedida a nombre del code-mandado, Sr. Luis Rivera Torres, la cual proveía cubierta de responsabilidad civil.
Durante el juicio, la parte demandante demostró que el difunto, Camacho Alvarado, trabajaba en Master Mix of Puerto Rico, donde desempeñaba varias funciones. La co-demandante, señora Molina Maldonado, trabaja como ama de casa y el único sustento del hogar eran los ingresos que *509 su difunto marido devengaba. Se demostró que el occiso Camacho Alvarado era un hombre familiar, cuyas priorida-des eran en beneficio de su familia.
El informe pericial económico, que estableció la partida por lucro cesante, fue estipulado por las partes. Por ello, no fue necesaria la declaración del perito durante el juicio. El referido informe establece que el lucro cesante por la muerte del señor Camacho Alvarado asciende a la cantidad de $187,127. También, el informe realizado por el agente Cruz Morán fue estipulado por las partes y presentado como evidencia durante el juicio y nunca se suscitó contro-versia alguna sobre tal informe.
En el juicio quedó probado que la única causa adecuada que provocó la muerte del esposo, padre y sobrino de los demandantes fue la negligencia del Sr. Luis Rivera Torres por conducir sin precaución y a exceso de velocidad. Por ello, el 6 de julio de 2006, el Tribunal de Primera Instancia emitió una Sentencia a favor de la parte demandante para concederles las cuantías indemnizatorias siguientes: a la señora Molina Maldonado $20,000; a sus hijas $100,000 a cada una; al señor Camacho Alvarado $25,000; pérdida de ingresos de la señora Molina Maldonado y de las niñas Camacho Molina $187,127; pérdida del automóvil $3,500, y $1,600 por gastos fúnebres. La suma total de los daños ascendió a $437,227.
El Tribunal de Primera Instancia encontró temerarios a los demandados por haber negado obstinadamente la ne-gligencia que provocó el accidente, por lo que los condenó a pagar $15,000 en concepto de honorarios de abogado. Es pertinente mencionar que los demandados no aportaron ningún tipo de prueba para controvertir la alegación de negligencia, la cual el Tribunal de Primera Instancia, se-gún expresó en su Sentencia, quedó demostrada incontrovertiblemente. Los demandados no presentaron ningún recurso post sentencia y la sentencia advino final y firme.
*510 El 5 de octubre de 2006, la C.S.M. presentó una moción para consignar en el Tribunal de Primera Instancia $500,000. Tal cantidad corresponde al límite máximo de cubierta por ocurrencia pactado en la póliza de seguro. La C.S.M. alegó que ese era el tope de su responsabilidad y que mediante la consignación extinguía su obligación. El 20 de octubre de 2006, los demandantes presentaron una moción en oposición a la moción de consignación e igual-mente solicitaron la ejecución de la Sentencia. El 27 de noviembre de 2006, el Tribunal de Primera Instancia de-claró “no ha lugar” la moción en oposición de los deman-dantes, por entender que la consignación realizada por la C.S.M. procedía en Derecho.
Inconformes con tal determinación, los demandantes acudieron ante el Tribunal de Apelaciones mediante certio-rari para alegar que, además de la indemnización antes mencionada, procedía conceder las cuantías siguientes: in-tereses pre sentencia $170,000; honorarios de abogados $15,000; intereses post sentencia $22,304; intereses per diem $111.52. Por ello, la suma total reclamada por los demandantes asciende a $645,210.06. El Tribunal de Ape-laciones acogió el recurso y dispuso, en parte, lo siguiente:
[S] e le ordena a la Cooperativa el pago de honorarios de abo-gado por temeridad aunque excedan el límite de la póliza. Ade-más, la Cooperativa deberá pagar los intereses legales du-rante el periodo anterior a la sentencia sobre la cuantía que no excedan de los límites de la póliza, pero los que se deriven después de dictada la sentencia, los sufragará, aunque exce-dan tales límites de la póliza. Apéndice de la Petición de cer-tiorari, pág. 41.
En cumplimiento con el mandato del Tribunal de Apela-ciones, el Tribunal de Primera Instancia procedió a cele-brar una vista para discutir la moción sobre ejecución de sentencia. En la vista quedó demostrado que la única con-troversia existente entre las partes son los intereses pre sentencia. El foro judicial primario le solicitó a las partes que prepararan memorandos para evaluar si la consigna- *511 ción fue conforme a Derecho. Evaluados los respectivos es-critos, el Tribunal de Primera Instancia determinó que los demandados adeudaban $102,816.78 en concepto de inte-reses pre sentencia e intereses post consignación sobre el balance adeudado.
Inconforme con tal determinación, la C.S.M. presentó una moción de reconsideración la cual fue declarada “no ha lugar”. Por ello, presentó un recurso de certiorari ante el Tribunal de Apelaciones para alegar que el Tribunal de Primera Instancia incurrió en el error siguiente:
Erró el T.P.I. al no observar las directrices de éste [sic] Tribunal en su sentencia revocatoria y conceder intereses presen-tencia en exceso de los límites de la póliza emitida por la peticionaria. Apéndice de la Petición de certiorari, pág. 8.
Los demandantes se opusieron a la expedición del re-curso de certiorari. No obstante, el Tribunal de Apelaciones expidió y revocó el dictamen emitido por el Tribunal de Primera Instancia. Inconformes con tal determinación, los demandantes y aquí peticionarios nos solicitan que revo-quemos la Sentencia emitida por el foro apelativo interme-dio por considerar que el Tribunal de Apelaciones incurrió en el error siguiente:
Erró el Tribunal de Apelaciones al Determinar que la C.S.M. solamente es responsable por el pago de los intereses Pre-Sentencia hasta el límite de su póliza en contravención a su propia determinación ... y ala norma establecida por este Honorable Tribunal [Supremo]. Apéndice de la Petición de certio-rari, pág. 8.
II

Se revoca la Sentencia recurrida.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente Señor Hernández Denton emitió una opinión de conformidad, a la cual se unió la *512 Jueza Asociada Señora Rodríguez Rodríguez. El Juez Aso-ciado Señor Rivera Pérez emitió una opinión de conformi-dad, a la cual se unieron la Jueza Asociada Señora Pabón Charneco y el Juez Asociado Señor Kolthoff Caraballo. La Jueza Asociada Señora Fiol Matta concurrió con el resul-tado sin opinión escrita. El Juez Asociado Señor Martínez Torres se inhibió.
(Fdo.) Aida Ileana Oquendo Graulau Secretaria del Tribunal Supremo
— O —
Opinión de conformidad emitida por el
Juez Presidente Se-ñor Hernández Denton,
a la cual se une la Juez Aso-ciada Señora Rodríguez Rodríguez.
Estamos conforme con la Sentencia emitida hoy, en tanto revoca el dictamen del Tribunal de Apelaciones, Re-gión Judicial de Arecibo (Martínez Torres, J., Feliciano Acevedo, J., Miranda de Hostos, J. ponente), y reinstala la sentencia dictada por el Tribunal de Primera Instancia. No obstante, ante el claro error de derecho que cometió el foro apelativo intermedio en este caso, estimamos necesario ex-presarnos brevemente para recalcar la norma vigente so-bre la responsabilidad de las aseguradoras por los intere-ses pre sentencia de manera que no quede duda sobre la forma en que debe ser aplicada.
En el caso de autos, el foro apelativo intermedio deter-minó que la aseguradora demandada, Cooperativa de Se-guros Múltiples, responde por los intereses pre sentencia solamente hasta el límite de la póliza de seguros. Incon-forme con esta determinación, los demandantes acuden ante nos y solicitan que revoquemos dicha sentencia por ser contraria a la jurisprudencia de este Tribunal.
En Roldán Medina v. Serra, 105 D.P.R. 507 (1976), re- *513 solvimos que, debido a que la responsabilidad que surge de la temeridad es individual, una aseguradora responde por su conducta temeraria mientras defiende a un asegurado. A base de ello concluimos que si la cuantía de la sentencia sobrepasa el límite de la póliza, entonces los intereses pre sentencia se calcularán sobre dicho límite y, aunque lo so-brepasen, deberán pagarse. A tales efectos, resolvimos que una aseguradora “no puede ser responsabilizada por inte-reses impuestos a base de temeridad que excedan los com-putados sobre las sumas que venga obligada a pagar bajo la póliza”. (Énfasis suplido.) íd., págs. 516-517. Es decir, “los intereses devengados durante el periodo anterior a la sentencia que se impongan a la aseguradora están limita-dos a aquellos que correspondan a la cuantía de la senten-cia que no exceda de los límites de la póliza Id., pág. 517. De hecho, allí modificamos la sentencia del tribunal de instancia para imponer a la aseguradora los intereses por temeridad sobre el límite de la póliza, por lo que la aseguradora tuvo que pagar una cantidad mayor a lo dis-puesto por ésta.
Como consecuencia de lo anterior, consideramos que el Tribunal de Apelaciones incurrió en un patente error al determinar que la Cooperativa de Seguros Múltiples es responsable de los intereses pre sentencia solamente hasta el límite de la póliza. Evidentemente, la norma establecida en Roldán Medina v. Serra, supra, opera de forma idéntica cuando el monto de la sentencia es inferior al límite de la póliza, como ocurre en el caso de autos. Es decir, en este caso corresponde calcular los intereses pre sentencia sobre el monto de la sentencia y la aseguradora deberá pagarlos, aunque el total de lo que esté obligada a pagar sobrepase el límite de la póliza.
Por último, por considerar que les asiste la razón a los demandantes, procede revocar la sentencia recurrida y re-afirmarnos en la normativa establecida en Roldán Medina v. Serra, supra.
*514 — o —
Opinión de conformidad del
Juez Asociado Señor Rivera Pérez,
a la cual se unen el Juez Asociado Señor Kolthoff Caraballo y la Jueza Asociada Señora Pabón Chameco.
Aunque la C.S.M. nunca cuestionó la imposición de la temeridad, para resolver la presente controversia procede discutir por qué una litigación temeraria es sancionable judicialmente. Veamos.
La temeridad es una actuación sancionada por las Re-glas 44.1(d) y 44.3 de Procedimiento Civil.(1) El propósito que persiguen estas reglas es "desalentar la radicación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible”.(2)
Hemos expresado que una parte es temeraria cuando entabla un pleito frívolo y obliga a la parte contraria a incurrir en gastos innecesarios.(3) De igual forma, se puede incurrir en temeridad cuando una parte se defiende en un pleito de forma injustificada frente a la acción instada en su contra; no admite su responsabilidad, obligando así a que la controversia sea dilucidada ante un tribunal en sus méritos, o cuando niega la veracidad de un hecho a pesar de éste ser de su pleno conocimiento. (4)
Las Reglas de Procedimiento Civil(5) sancionan, entre otras cosas, a los litigantes temerarios con la imposición de intereses legales. La Regla 44.3 de Procedimiento Civil, supra, dispone dos tipos de intereses legales: intereses pre sentencia e intereses post sentencia. El interés post sen-tencia está disponible para toda parte victoriosa, no im- *515 porta si la parte contraria actuó con temeridad o no.(6) El propósito de dicha penalidad es promover que las senten-cias que envuelvan cuantías monetarias sean satisfechas a la mayor brevedad posible.
El caso de marras versa sobre una reclamación de daños y perjuicios. En estos casos los intereses pre sentencia con-cedidos a la parte victoriosa, cuando la parte contraria ha procedido con temeridad, se calculan a partir de la presen-tación de la demanda y hasta que se dicte sentencia.(7) La tasa de interés aplicable será la que haya fijado la Junta Financiera del Comisionado de Instituciones Financieras al momento de emitirse la sentencia.(8) El interés pre sen-tencia se fija sobre la totalidad de la sentencia sin incluir las costas ni los honorarios de abogado.(9)
En síntesis, las Reglas de Procedimiento Civil sancio-nan la litigación temeraria con el propósito de evitar incon-venientes en el buen funcionamiento de los tribunales. Lo antes expuesto promueve una sana administración de la justicia y protege al litigante de buena fe, tratando de evi-tar que pase injustificadamente por un proceso judicial así como incurrir en gastos innecesarios. Una parte temeraria asume voluntariamente el riesgo y las consecuencias que lleva el litigar un caso de esa manera.
Debido a que la C.S.M. nunca cuestionó que el Tribunal de Primera Instancia la haya declarado temeraria, la única controversia ante nuestra consideración es si la sanción de pagar intereses pre sentencia por haberse encontrado a la C.S.M. temeraria puede rebasar el límite de cubierta por ocurrencia en una póliza de séguro. Para ello, nos es for-zoso discutir el alcance del deber de representación legal que una aseguradora tiene ante su asegurado. Veamos.
*516 El propósito en las pólizas de seguro de responsabilidad civil es que la aseguradora indemnice los daños causados por su asegurado a un tercero o a la propiedad de éste, ya sea mediando culpa o negligencia.(10) Otro de los deberes de la aseguradora es ofrecerle representación legal al asegu-rado en las acciones judiciales que se entablen en su contra.(11) La representación legal se toma innecesaria si la aseguradora transige la reclamación extrajudicial-mente. En síntesis, el asegurado posee una expectativa de que en cualquier eventualidad futura en que incurra en algún acto u omisión negligente esté protegido por la póliza de seguro.(12)
El Artículo 20.010 del Código de Seguros dispone, en parte, lo siguiente: “[e]l asegurador que expidiere una pó-liza asegurando a una persona contra daños o perjuicios, por causa de responsabilidad legal por lesiones corporales, muerte o daños a la propiedad de una tercera persona, será responsable cuando ocurriere una pérdida cubierta por dicha póliza ...”.(13) Por ello, como norma general, el asegu-rador asume incondicionalmente la defensa legal de su asegurado.
Las aseguradoras tienen el deber de otorgarles repre-sentación legal a sus asegurados en pleitos que se entablen en contra de éstos últimos, siempre y cuando el riesgo esté cubierto por la póliza de seguro.(14) Tal obligación de las aseguradoras frente a sus asegurados surge de la relación *517 contractual existente entre éstos. La obligación es latente, no importa si las alegaciones contenidas en la reclamación son frívolas, falsas o sin fundamento. La referida obliga-ción de proveer representación legal sucumbe cuando las reclamaciones en contra de un asegurado no tienen rela-ción con los riesgos cubiertos por la póliza de seguro.(15)
Además, el Artículo 20.030 del Código de Seguros(16) le provee a una persona que haya sufrido algún daño o per-juicio, por algún acto culposo o negligente, tres alternati-vas para dirigir el curso de acción legal a seguir: (1) diri-girse de forma directa en contra del asegurado; (2) dirigirse de forma directa en contra del asegurador, o (3) dirigirse en contra de ambos, entiéndase asegurador y asegurado.(17) El Código de Seguros permite que un perjudicado entable una causa de acción sustantiva y directa en contra de una ase-guradora cuando ocurre una pérdida —cubierta por la pó-liza de seguro— independientemente de la causa de acción en contra del asegurado, quien fue el causante del daño.(18)
En suma, una persona que sufra daños o peijuicios cau-sados por la negligencia o culpa de una persona asegurada puede entablar una acción directa en contra del culposo o negligente. No obstante, en esta jurisdicción se permite es-tatutariamente que se entable una acción directa en contra de la aseguradora o en contra del asegurado y de la asegu-radora simultáneamente,(19) La forma de entablar la recla-mación judicial es discrecional de la persona que haya su-frido los daños o peijuicios.(20) Tal proceder se fundamenta en la responsabilidad absoluta del asegurador.(21)
*518 Una mayoría de los estados de la Unión concurren en que la existencia de buena fe o no en la representación legal de un asegurado es inmaterial para los efectos de la responsabilidad absoluta del asegurador.(22) Por ello, es que se permite pactar en las pólizas de seguro claúsulas en las cuales se le otorga todo el poder discrecional sobre el ma-nejo de un caso judicial entablado contra su asegurado. (23) Lo anterior es consecuente con el Artículo 20.010 del Código de Seguros, supra, en cuanto a la responsabilidad ab-soluta del asegurador, y también con el Artículo 20.030 del mismo cuerpo legal referente a litigios en contra del ase-gurado o del asegurador.
Hemos expresado que una aseguradora viene obligada a otorgarle, además de la cubierta, representación legal a un asegurado.(24) El incumplimiento de lo anterior conlleva la sanción del pago de las costas del litigio, así como lo que el Tribunal de Primera Instancia disponga sobre honorarios de abogado. (25) Ello se debe a que el deber de defender a los asegurados crea un deber de fiducia entre la aseguradora y el asegurador.(26) Tal relación requiere honestidad entre las partes contratantes, entiéndase el asegurado y asegurador. La confianza y la expectativa de que una aseguradora de-fienda a su asegurado en una acción judicial instada en su contra por un riesgo cubierto en su póliza de seguros crea, implícitamente, la relación fiduciaria entre el asegurado y la aseguradora bajo una póliza de responsabilidad civil.(27)
*519 El que una aseguradora tenga el deber de representar legalmente a su asegurado no significa que la aseguradora tenga una obligación de litigar la controversia en sus méritos. En la póliza de responsabilidad civil toda asegura-dora se reserva el derecho a transigir cualquier reclama-ción instada contra un asegurado si lo determina prudente.(28) En síntesis, la aseguradora voluntariamente y a base de su experiencia decide si lo más prudente es transigir la reclamación instada en contra de su asegurado o litigar la controversia en sus méritos. La referida potes-tad es de la aseguradora. Por lo expuesto, es previsible que una aseguradora, mediante sus actos y decisiones, incurra en algún tipo de negligencia, la cual podría culminar en algún daño o perjuicio para su asegurado.
Cuando un asegurado sufre un daño que era previsible y fue causado por un acto u omisión negligente de su asegu-radora, ésta estará obligada a reparar los daños sufridos por su asegurado.(29) Por el contrario, si las consecuencias de los actos u omisiones de la aseguradora no fueran pre-visibles, entonces ésta no incurriría en negligencia ante su asegurado y no tendría el deber legal de responder por los daños sufridos por su asegurado.(30) Hemos expresado que las consecuencias de un acto negligente que deben preverse son las que están dentro de las probabilidades y no dentro de las posibilidades.(31) En síntesis, cuando una asegura-dora expide una póliza de responsabilidad civil tendrá el control sobre cualquier reclamación civil cubierta por la póliza de seguro que se entable en contra de su asegurado.
Debido a la situación en que se encuentran las asegura- *520 doras, para decidir si transige una reclamación instada en contra de uno de sus asegurados o por el contrario decide litigarla judicialmente, es que se espera un alto grado de cuidado y prudencia por parte de las aseguradoras. El grado de prudencia y cuidado tiene que ir dirigido a salva-guardar los intereses de su asegurado.(32) Una aseguradora que asume la defensa de un asegurado no debe anteponer sus intereses a los de su asegurado. Tal actuación desvir-tuaría el propósito de las pólizas de seguros, las cuales pretenden brindar una expectativa de tranquilidad al ase-gurado en caso de ocurrir cualquier evento cubierto por la póliza de seguro.(33)
Aunque la aseguradora contrata la representación legal del asegurado, ésta está obligada a emplear, con los asun-tos e intereses del asegurado, el grado de cuidado que una persona prudente y razonable ejercitaría en la defensa de sus propios intereses.(34) Si la aseguradora no cumple de buena fe con tal norma de conducta será responsable ante su asegurado por cualquier cuantía en exceso del límite por ocurrencia pactado en la póliza de establecerse mediante sentencia una indemnización mayor.(35)
La responsabilidad del asegurador por el monto com-pleto de la sentencia obtenida al no emplear el debido cui-dado en la defensa de su asegurado dimana de su violación a una obligación contractual de la cual surge un derecho del asegurado o del cumplimiento negligente de tal obligación.(36) De un contrato de seguro emana un convenio entre las partes contratantes, entiéndase el asegurador y la aseguradora, de que ninguna de las partes envueltas en *521 la relación contractual podrá realizar gestión alguna que perjudique los derechos de la otra parte.(37) Por lo expuesto, una aseguradora que conduzca y dirija la representación legal de un caso contra su asegurado debe actuar de buena fe para salvaguardar los intereses de éste último.(38) La aseguradora está obligada a emplear el grado de diligencia y cuidado razonable según las circunstancias particulares de cada caso.(39)
El Artículo 1056 del Código Civil de Puerto Rico dispone lo siguiente: “[l]a responsabilidad que proceda de negligen-cia es igualmente exigible en el cumplimiento de toda clase de obligaciones, pero podrá moderarse por los tribunales según los casos.”(40) Además, el Artículo 1057 del Código Civil dispone lo siguiente:
La culpa o negligencia del deudor consiste en la omisión de aquella diligencia que exija la naturaleza de la obligación y corresponda a las circunstancias de las personas, del tiempo y del lugar.
Cuando la obligación no exprese la diligencia que ha de prestarse en su cumplimiento, se exigirá la que corresponde-ría a un buen padre de familia.(41)
Una aseguradora incurre en negligencia en la defensa de su asegurado cuando no exhibe el patrón de conducta correspondiente a un buen padre de familia; entiéndase, el de una aseguradora prudente y razonable en el descargue de sus funciones.(42) Para determinar si una aseguradora actuó negligentemente en la defensa de los intereses de su asegurado hay que ponderar, a modo ilustrativo, los facto- *522 res siguientes: si el caso pudo haber sido transigido dentro del límite de la póliza;(43) la investigación realizada por la aseguradora sea inadecuada o incompleta; la aseguradora haya manejado negligentemente la negociación de una po-sible transacción', falta de preparación adecuada para asu-mir la defensa de su asegurado; no se invocaron a tiempo las defensas disponibles o la aseguradora contrató los ser-vicios de un abogado sin experiencia en todas las áreas del derecho aplicables; la aseguradora no levantó ninguna de-fensa afirmativa disponible en beneficio de su asegurado; la aseguradora no contestó la demanda o cualquier alega-ción responsiva; que deje de descubrir evidencia intrínseca para el caso', dejar de recurrir en alzada a un tribunal de mayor jerarquía dentro del término disponible para ello cuando una sentencia adversa con toda probabilidad po-dría ser revocada. (44)
Hemos establecido, como norma general, que una ase-guradora responde en exceso del límite por ocurrencia al verse obligada a pagar las costas y los honorarios de abo-gado cuando falta a su deber de proveerle representación legal bona fide a su asegurado. Lo anterior, siempre y cuando el riesgo que motivó la reclamación esté cubierto por la póliza.(45) Una mayoría de los estados de la Unión reconocen la obligación del asegurador en el pago total de la sentencia, no importa si la cuantía excede el monto del límite por ocurrencia pactado en la póliza de seguro. Ade-más, la aseguradora podría ser sancionada y tener que pa-gar las costas, los intereses pre sentencia y los honorarios de abogado según el tribunal estime pertinente en el ejer-cicio de su sana discreción judicial.(46) De igual forma, la *523 aseguradora está obligada a pagar todos los intereses post sentencia, haya actuado de buena fe o de mala fe.(47)
¿En el caso de marras, la C.S.M. tiene la obligación de pagar intereses pre sentencia sobre el límite por ocurren-cia pactado en la póliza de seguro por haber sido encon-trada temeraria? Nos es forzoso contestar tal interrogante en la afirmativa. Veamos.
La Regla 44.3 de Procedimiento Civil, supra, dispone, en parte, lo siguiente:
(b) El tribunal también impondrá a la parte que haya pro-cedido con temeridad el pago de interés al tipo que haya fijado la Junta en virtud del inciso (a) de esta regla y que esté en vigor al momento de dictarse la sentencia desde que haya sur-gido la causa de acción en todo caso de cobro de dinero y desde la presentación de la demanda, en caso de daños y perjuicios, y hasta la fecha en que se dicte sentencia, excepto cuando la parte demandada sea el Estado Libre Asociado de Puerto Rico, sus municipios, agencias, instrumentalidades o funcionarios en su carácter oficial.
Cuando un tribunal en su sana discreción encuentra a una parte temeraria está imponiendo una sanción procesal. Uno de los propósitos de la sanción es compensar, en lo posible, los daños o prejuicios sufridos por la parte que no ha sido temeraria.(48) Concluimos que la obligación de satisfacer una sanción por haber sido hallado temerario surge de la conducta del litigante. En el caso ante nos, la C.S.M. por haber ejercido el control absoluto en la litiga-ción del caso. Tal obligación es separada y distinta a la obligación de la aseguradora de reparar los daños causados por su asegurado hasta el límite máximo de cubierta por ocurrencia pactado en la póliza de responsabilidad civil. Cuando un Tribunal de Primera Instancia en el ejercicio de su sana discreción concluye que una de las partes actuó de *524 forma temeraria, procede la imposición de los intereses por temeridad y honorarios de abogado para sancionar tal actuación. (49) De otra parte, los intereses forman parte de la sentencia y pueden cobrarse aunque éstos no se mencio-nen en la sentencia. (50)
No podemos perder de perspectiva que la industria de seguros está revestida de un alto interés público, máxime cuando algunas pólizas de seguro se han convertido en re-quisitos obligatorios para poder cumplir con ciertas y de-terminadas obligaciones. No hemos encontrado funda-mento legal que impida imponer el pago de honorarios de abogado a una aseguradora que haya sido encontrada te-meraria aunque sobrepase el límite por ocurrencia pactado en la póliza de seguro.(51) De igual forma, no encontramos fundamento legal que impida sancionar a una aseguradora con la imposición de intereses pre sentencia en exceso al límite por ocurrencia pactado en la póliza de seguro cuando ésta ha sido temeraria y tuvo el control de la representación legal otorgada a su asegurado.
La Regla 44.3 de Procedimiento Civil, supra, establece claramente una sanción a la parte temeraria. De igual forma, la Asamblea Legislativa decidió excluir de su apli-cación al Gobierno, los municipios, las agencias, instru-mentalidades o funcionarios en su carácter oficial. No obs-tante, en ninguna de las disposiciones contenidas en las Reglas de Procedimiento Civil encontramos que una asegu-radora pueda ser liberada de la sanción por temeridad.
En el caso ante nos, cuando los agentes de la policía se presentaron a la escena del accidente, el codemandado, Sr. Luis Rivera Torres, admitió haber perdido el control del vehículo e impactar al señor Camacho Alvarado causán-dole la muerte en el acto. Además, el informe del accidente *525 fue estipulado entre las partes y presentado como evidencia sin que surgiera controversia durante el juicio. De igual forma, el informe pericial económico que estableció el lucro cesante de los demandados por la cantidad global de $187,127, fue estipulado por las partes.
Es pertinente reseñar que los demandados nunca refuta-ron la alegación de negligencia, la cual el Tribunal de Pri-mera Instancia dictaminó en su Sentencia que fue probada de forma incontrovertible. Por lo expuesto, la actuación de la representación legal provista por la C.S.M. fue clara-mente temeraria, como bien dictaminó el foro primario. La C.S.M. no admitió su responsabilidad, lo que produjo que la controversia se dilucidara ante el foro primario a pesar de que la negligencia en la que incurrió su asegurado era de su pleno conocimiento(52) y litigó el caso de forma obstinada. El no sancionar a la C.S.M. con el pago de inte-reses pre sentencia que sobrepasen el límite de cubierta por ocurrencia sería premiarla por una actuación contu-maz ante los tribunales de justicia. De igual forma, impli-caría sancionar a una persona —el asegurado— quien en el caso ante nos, según se deduce del expediente judicial, no tuvo ningún tipo de injerencia sobre la representación legal brindada por la C.S.M. Concluimos que en el presente caso la C.S.M. está obligada a pagar la totalidad de los intereses pre sentencia aunque éstos sobrepasen el límite de cubierta por ocurrencia pactado en la póliza de seguro.
El propósito de la norma aquí pautada es que se cumpla con la Regla 44.3 de Procedimiento Civil, supra, para san-cionar la litigación temeraria, evitando así la presentación de pleitos frívolos.(53) Una aseguradora se libera de la teme-ridad cuando, a su mejor entender, el accidente fue causado por su asegurado y así se lo hace constar al Tribunal de *526 Primera Instancia en su primera alegación, no importa el parecer de su asegurado.(54) Cuando la aseguradora en-tiende que el valor de la reclamación excede el límite por ocurrencia pactado en la póliza, tiene el deber de consignar el importe máximo que tenga que pagar debido a su obliga-ción contractual con su asegurado. Lo anterior evita que una aseguradora sea encontrada incursa en temeridad, además de agilizar los procedimientos judiciales.(55) Una oferta de sentencia es el recurso idóneo, si se presenta en la primera oportunidad. Dicha oferta de sentencia no elimina la temeridad de la aseguradora antes de realizar la oferta pero pude ser considerada como un atenuante ante la san-ción a imponerse por temeridad.(56)
Permitir a una aseguradora que tiene el control de la representación legal de ésta o de su asegurado litigar te-merariamente y sólo responder por los intereses pre sen-tencia hasta el tope del límite por ocurrencia pactado en la póliza de seguro es permitir una injusticia. Se llegaría al absurdo de incentivar a las aseguradoras a litigar todo tipo de reclamación entablada en su contra o contra un asegu-rado, aunque sea de forma temeraria. Ello, en contraven-ción a los principios cardinales de nuestro sistema procesal civil.(57)
De esa forma, se desvirtuaría el propósito del contrato de seguro. Podría producirse la anomalía en que el asegu-rado esté obligado a pagar una cantidad mayor por los in-tereses pre sentencia que la aseguradora —por la temeri-dad de ésta última— de limitarse los intereses pre sentencia al tope del límite por ocurrencia pactado en la póliza de seguro. No podemos ignorar que en un caso como el de autos la aseguradora fue quien tuvo el control de la *527 defensa de su asegurado. Tal situación resulta ser onerosa para el asegurado. Ello, debido a que la aseguradora no estaría obligada a responder por su temeridad y conducta violatoria a su deber de fiducia para con el asegurado.
No se puede perder de perspectiva que las asegurado-ras, en la mayoría de los casos, se encuentran en una po-sición más aventajada que la otra parte contra quien litiga. Ello, por ser expertos en la industria de seguros así como por contar con abogados entrenados en tal área del Derecho. Es razonable que una aseguradora responda por su temeridad y su conducta negligente. Lo anterior evita que un asegurado se vea obligado a pagar una suma en exceso al límite de cubierta por ocurrencia pactado en la póliza de seguro debido a la conducta temeraria observada por la aseguradora a través de la representación legal que seleccionó para atender su causa.(58)

 La señora Molina Maldonado es la viuda del occiso, con quien había con-traído nupcias en 1995. Durante el matrimonio procrearon dos hijas, ambas menores de edad. El señor Camacho Cosme era tío del occiso, pero quedó probado que éste fungió como su padre de crianza y que mantenían estrechas relaciones familiares.

 32 L.P.R.A. Ap. III.

 32 L.P.R.A. Ap. III.

 P.R. Oil v. Dayco, 164 D.P.R. 486, 511 (2005); Torres Ortiz v. E.L.A., 136 D.P.R. 556, 565 (1994).

 O.E.G. v. Román, 159 D.P.R. 401, 418 (2003).

 32 L.P.R.A. Ap. III.

 Íd.

 Gutiérrez v. A.A.A., 167 D.P.R. 130 (2006); Reyes v. Banco Santander de P.R., N.A., 583 F. Supp. 1444 (1984).

 32 L.P.R.A. Ap. III.

 Gutiérrez v. A.A.A., supra.

 Las aseguradoras no responden por los daños causados intencionalmente por un asegurado.

 Pagán Caraballo v. Silva, Ortiz, 122 D.P.R. 105 (1988); Morales Garay v. Roldán Coss, 110 D.P.R. 701 (1981).

 26 L.P.R.A. sec. 2001; PFZ Props., Inc. v. Gen. Acc. Ins. Co., 136 D.P.R. 881 (1994).

 26 L.P.R.A. sec. 2001.

 Torres Pérez v. Colón García, 105 D.P.R. 616 (1977); Republic Vanguard Insurance Co. v. Buehl, 204 N.W. 2d 426 (1973). Una aseguradora debe notificar al asegurado su intención de rechazar responsabilidad y su negativa a ofrecerle repre-sentación legal. De esta forma, se le da el tiempo necesario para que el asegurado pueda contratar una representación legal. Appleman, Insurance Law and Practice Sec. 4686, pág. 168.

 González v. The Commonwealth Ins. Co., 140 D.P.R. 673 (1996); PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra.

 26 L.P.R.A. sec. 2003.

 Íd.; Neptune Packing Corp. v. Wackenhut Corp., 120 D.P.R. 283 (1988).

 26 L.P.R.A. sec. 2003; Trigo v. The Travelers Ins. Co., 91 D.P.R. 868 (1965).

 26 L.P.R.A. sec. 2003.

 Véanse: Pérez v. Advisors Mortgage Investors, 130 D.P.R. 530 (1992); Admor. F.S.E. v. Flores Hnos. Cement Prods., 107 D.P.R. 789 (1978).

 26 L.P.R.A. sec. 2003.

 Véanse: Empire State Surety Co. v. Pacific Nat. Lumber Co., 200 F. 224 (1912); Tozer v. Ocean Accident & Guaranty Corp., 109 N.W. 410 (1906); B.R. Ostrager & T.R. Newman, Handbook on Insurance Coverage Disputes, 10ma ed., Ed. Aspen Law & Business, 2000, págs. 717-726.

 PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra; Employers Casualty Co. v. Moore, 142 P.2d 414 (1943).

 Pagán Caraballo v. Silva, Ortiz, supra. Véanse, también: PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra; Morales Garay v. Roldán Coss, supra.

 Íd.

 Baxter v. Royal Indemnity Company, 285 So. 2d 652, 655 (1973); Tyler v. Grange Insurance Association, 473 P.2d 193, 197 (1970); Bennett v. Conrady, 305 P.2d 823, 827 (1957).

 Íd.

 Existe una excepción. En acciones civiles donde el demandado posee una póliza de responsabilidad civil profesional la aseguradora no puede transigir la re-clamación sin la aquiescencia del asegurado, independientemente de la cuantía reclamada. R. Cruz, Derecho de Seguros, San Juan, Pubs. J.T.S., 1999, Sec. 24.2, pág. 302.

 Cruz, op. cit, See. 25.5, pág. 318.

 Íd.

 Faulkner v. Nieves, 76 D.P.R. 434 (1954).

 Southern Farm Bureau Casualty Ins. Co. v. Parker, 341 S.W.2d 36 (1961); Traders & General Ins. Co. v. Rudco Oil & Gas Co., 129 F.2d 621 (1942); 142 A.L.R. 799.

 26 L.RR.A. sec. 2001; Cruz, op. cit., Sec. 23.1, pág. 289.

 Roldán Medina v. Serra, 105 D.P.R. 507 (1976).

 Stilwell v. Parsons, 145 A.2d 397 (1958); Auto Mut. Indemnity Co. v. Shaw, 184 So. 852 (1938); Ballard v. Ocean Accident & Guarantee Co., C.C.A. 1936 Wis. 86 (1936); 86 F.2d 449 (1936).

 Chittick v. State Farm. Mut., 170 F. Supp. 276 (1958).

 Morales v. Automatic Vending Service, Inc., 103 D.P.R. 281 (1975); Gruenberg v. Aetna Insurance Company, 510 P.2d 1032 (1973); Crisci v. Security Insurance Co. of New Haven, Conn., 426 P.2d 173 (1967).

 Southern Farm Bureau Casualty Ins. Co. v. Parker, supra; Traders General Ins. Co. v. Rudco Oil & Gas Co., supra.

 Íd.

 31 L.P.R.A. sec. 3020.

 31 L.P.R.A. sec. 3021.

 Cruz, op. cit., Sec. 25.5, pág. 315.

 Morales v. Automatic Vending Service, Inc., supra.

 Cruz, op. cit., See. 25.4, págs. 317-318.

 PFZ Props., Inc. v. Gen. Acc. Ins. Co., supra.

 Ostrager y Newman, op. cit., págs. 717-726; G.J. Couch, Cyclopedia of Insurance Law, 2da ed., L.C.P. & B.W., 1983, See. 56:38, págs. 55-57.

 Íd.; 32 L.P.R.A. Ap. III.

 Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990); Santos Bermúdez v. Texaco P.R., Inc., 123 D.P.R. 351 (1989); Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713 (1987).

 Torres Ortiz v. E.L.A., 136 D.P.R. 556 (1994).

 Municipio de Mayagüez v. Rivera, 113 D.P.R. 467 (1982).

 Íd. Tampoco hemos encontrado fundamento legal que impida imponer el pago de intereses post sentencia a una aseguradora aunque éstos sobrepasen el límite por ocurrencia pactado en la póliza de seguro. íd.

 O.E.G. v. Román, supra.

 Es importante reseñar que una cláusula en una póliza de seguro en la cual se disponga que la aseguradora no responderá por intereses en exceso al límite por ocurrencia pactado en la póliza no es absoluta. Ello, porque las aseguradoras no pueden renunciar o liberarse de la sanción por temeridad mediante una cláusula.

 Véanse: Roldán Medina v. Serra, supra; Vda. de Passalacqua v. Cancel, 90 D.P.R. 501, 503 (1964); U.S. Casualty v. Tribunal Superior, 89 D.P.R. 785, 789 (1964).

 Roldán Medina v. Serra, supra.

 Íd.

 32 L.P.R.A. Ap. III.

 Cuando en la demanda se reclama una cantidad mayor al límite por ocu-rrencia pactado en la póliza de seguro, el asegurado puede conseguir una representa-ción legal para salvaguardar sus intereses respecto a la cantidad en exceso al límite de cubierta. En tales casos la imposición de intereses pre sentencia sobre el límite pactado en la póliza de seguro podría no recaer en la aseguradora si la actuación temeraria es de la representación legal pagada por el asegurado para beneficio exclu-sivo de éste.